**UNITED STATES of America,
Plaintiff,**

**v.**

**Hector L. ORTA–CASTRO, Defendant.**

**Crim. No. 14–0754(DRD).**

United States District Court,
D. Puerto Rico.

Signed May 11, 2015.

---

**2.** *See Clemente*, 52 F.3d at 386; *United States v. Gray*, 199 F.3d 547, 550 (1st Cir.1999).

Eugenio A. Lomba–Ortiz, United States Attorneys Office, San Juan, PR, for Plaintiff.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

### I. BACKGROUND

Pending before the Court is Defendant Hector L. Orta–Castro's ("Defendant" or "Orta") request for the Court to revisit the determination of the Honorable U.S. Magistrate Judge Marcos E. Lopez; entered on January 13, 2015 (Docket No. 91) after conducting a Bail Review Hearing, denying bail.

On December 18, 2014, the Grand Jury handed down a two count indictment against Defendant charging him with Conspiracy to possess firearms in furtherance of a drug trafficking crime under 18 U.S.C. § 924(o) and conspiracy to commit money laundering under 18 U.S.C. § 1956(h). See Docket No. 3. Some months later, on June 6, 2014, a Grand Jury handed down a separate one count indictment (Docket No. 19) against Defendant charging him with possession of a firearm by a felon under 18 U.S.C. § 922(g)(1).

On January 12, 2015, Magistrate Judge Marcos E. Lopez conducted a Bail Review Hearing. In denying Defendant's bail request, the Magistrate found that Defendant posed a danger to the community. See Docket No. 91

On March 2, 2015, Defendant filed a Motion for De Novo Review (Docket No. 199) of the Magistrate Judge's determination arguing, inter alias, that the Magistrate failed to hold the government to its statutory burdens of proof. Defendant further argued that there is insufficient evidence to establish by clear and convincing evidence that Orta presents a danger to the community. Additionally, Defendant contends that the Magistrate Judge erred in permitting the United States to proceed by proffer as opposed to producing the witness who allegedly heard Defendant threatening another individual. See Id.

On March 10, 2015, the Court held a De Novo Hearing (Docket Nos. 202) where the Court heard the arguments from defense counsel as to the possible conditions of bail. The testimony of Brenda Gomez–Encarnacion and Luis Rafael Torres–Lopez were heard on behalf of defendant. The SAUSA presented the arguments as to defendant's role and presumption for risk to flight and danger to the community. The Court, upon listening to the parties' final arguments, held in abeyance. Defendant's bail request.

### II. BAIL REVIEW UNDER THE BAIL REFORM ACT

Where, as here, a magistrate judge's detention order is contested, the Court

must consider the matter *de novo* under the guidelines set forth by the Bail Reform Act at 18 U.S.C. § 3142.[1] *United States v. Tortora,* 922 F.2d 880, 883 n. 4 (1st Cir. 1990); *see also United States v. Torres–Rosario,* 600 F.Supp.2d 327, 330 (D.P.R. 2009). The Court proceeds accordingly.

The Bail Reform Act sets forth four factors which the Court must weigh in determining whether pretrial detention is warranted. They are: "(1) the nature and circumstances of the offense charged; (2) the weight of the evidence as to guilt or innocence; (3) the history and characteristics of the accused, including past conduct; and (4) the nature and gravity of the danger posed by the person's release." *Tortora,* 922 F.2d at 884 (citing the factors outlined at 18 U.S.C. § 3142(g)(1)-(4)); *see*

*also United States v. Gines Perez,* 152 F.Supp.2d 137, 148 n. 13 (D.P.R.2001); *Torres–Rosario,* 600 F.Supp.2d at 330.

However, under the Bail Reform Act, where a criminal defendant is charged with crimes that reach a predetermined threshold,[2] including those with which Defendant is charged in the instant case,[3] a presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3); *see also Gines Perez,* 152 F.Supp.2d at 147. The presumption, therefore, is that the criminal defendant poses a risk both of flight prior to prosecution and a risk of danger to the community. *United States v. Jessup,* 757

1. The Court remains cognizant that Hector Orta–Castro enjoys the presumption of innocence at this stage of the proceedings. *See Bull v. City & County of San Francisco,* 595 F.3d 964, 996 (9th Cir.2010) ("detainees still enjoy the presumption of innocence"). The presumption of innocence means that the fact "[t]hat an individual is charged with a crime cannot, as a constitutional matter, give rise to any inference that he is more likely than any other citizen to commit a crime if he is released from custody. Defendant is, after all, constitutionally presumed to be innocent pending trial, and innocence can only raise an inference of innocence, not of guilt." *United States v. Scott,* 450 F.3d 863, 874 (9th Cir.2006). Moreover, the Bail Reform Act explicitly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Although a pre-trial Defendant benefits from the presumption of innocence, detention may nevertheless be warranted as "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling." *United States v. Salerno,* 481 U.S. 739, 749, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

2. Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety

of the community if the judicial officer finds that there is probable cause to believe that the person committed—

(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46;
(B) an offense under section 924(c), 956(a), or 2332b of this title;
(C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed;
(D) an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed; or
(E) an offense involving a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title.
18 U.S.C. § 3142(e)(3).

3. The defendant is charged with a serious drug trafficking crime and of possession with intent to distribute enormous quantities of drugs under 21 U.S.C. § 341(a)(1) and extremely high quantities of money laundering on behalf of the drug organization under 18 U.S.C. § 1956(h).

F.2d 378, 384 (1st Cir.1985), *partially abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810, 814 (1st Cir.1990) (abrogating *Jessup* only as to the standard of appellate review); *see also Gines Perez*, 152 F.Supp.2d at 147. "We apply a preponderance of the evidence standard to the proof pertaining to flight risk, but clear and convincing evidence must be introduced to support the conclusion that a defendant's detainment prior to trial is necessary to ensure the safety of the community." *Torres–Rosario*, 600 F.Supp.2d at 330 n. 4; *See United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir.1991) (preponderance of the evidence to establish "risk of flight"); 18 U.S.C. § 3142(f) (requiring satisfaction of a "clear and convincing" standard of proof as to dangerousness to the community as upheld by the U.S. Supreme Court in *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

■ Once triggered in the cases that reach the rebuttable presumption of "danger to the community" and "flight risk," the defendant may rebut the presumption by producing "conflicting evidence" to undercut the legislative purpose of the presumption as to the risks of danger and flight. *Id.* (outlining what is known as the "intermediate position").[4] The defendant is required to produce "some evidence" to

the contrary. *O'Brien*, 895 F.2d at 815. However, it is not merely any evidence that destroys the presumption since the "bursting bubble theory" was expressly rejected by then Circuit Judge of the First Circuit Court of Appeals Steven Breyer, in *United States v. Jessup*, 757 F.2d at 382–383. The "intermediate position" adopted in *Jessup* requires a defendant to produce "conflicting evidence" as to "danger" and "flight"[5] and then the Court "determine[s] on which side the evidence preponderates." *Jessup*, 757 F.2d at 383 (citing *Wright v. State Accident Insurance Fund*, 289 Or. 323, 613 P.2d 755, 759–60 (1980)). The Court must weigh any evidence proffered by the defendant against the presumption and evidence produced by the government in order to determine whether detention without bail is appropriate. *Gines Perez*, 152 F.Supp.2d at 147 (citing *Jessup*, 757 F.2d at 384); *see also United States v. Villanueva–Rodriguez*, 190 F.Supp.2d 257, 259 (D.P.R.2002). Thus, while the burden of persuasion always rests with the United States, the burden of production shifts to the defendant once the presumption is activated. *See Jessup*, 757 F.2d at 384.

The presumption has a "significant practical effect." *Jessup*, 757 F.2d at 384.[6] The presumption does not shift the burden of persuasion to the defendant, because the government retains the burden

**4.** *Jessup*, 757 F.2d at 383 (noting that "the House of Judiciary adopted this sort of 'intermediate position'....").

**5.** *Jessup*, 757 F.2d at 383 (citing the theory of Hecht and Pinzler, Rebutting Presumptions: Order Out of Chaos, 58 B.U.L.Rev. 527 (1978)).

**6.** In *United States v. O'Brien*, 895 F.2d at 814, the Circuit Court abrogated *Jessup* as to the standard of appellate review. The First Circuit in O'Brien adopted the appellate standard of review enunciated in *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir.1985), which is "an independent review ... tem-

pered by deference to the district court's firsthand judgment of the situation" rather than the clearly erroneous or other highly deferential standard utilized in *Jessup*, 757 F.2d at 387–388, *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir.1985), *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985), and *United States v. Williams*, 753 F.2d 329, 333 (4th Cir.1985). *O'Brien*, however, reiterates and follows the standard of burden shifting, presumption and of preponderance of the evidence of *Jessup* stated herein applicable for bail determinations at District Court level. 895 F.2d at 815.

throughout. However, once the presumption is triggered, the defendant is required to carry the burden of production. *United States v. Jessup*, 757 F.2d at 380–384. The presumption created is that "... no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten or more years is prescribed in the Controlled Substances Act, (21 U.S.C. 801 et seq.)" 18 U.S.C. 3142(e). The presumption created is, therefore, of "flight risk" and "danger" to the community. *Jessup*, 757 F.2d at 381.

■ Even after a defendant has produced evidence to rebut the presumption as to both "danger" to the community and risk of "flight," "the presumption does not disappear, but rather retains evidentiary weight—the amount depending on how closely defendants' case resembles the Congressional paradigm, *Jessup*, 757 F.2d at 387—to be considered with other relevant factors." *United States v. Palmer–Contreras*, 835 F.2d 15, 17 (1st Cir.1987). Finally, in making its final determination after receiving the rebuttal pursuant to § 3142(g), the judicial officer must consider among other statutory factors "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including ... character, physical and mental condition, family history ... past conduct" and the "danger posed to the community" by his release. *Id.*

### III. ANALYSIS

■ As an initial matter, the Court states that offenses which carry a maxi-

mum punishment of ten years or more activate the rebuttable presumption of detention without bail. *See* 18 U.S.C § 3142(e)(3)(C). Orta is charged with a violation of 18 U.S.C. § 1956(h), which carries a maximum prison term of ten years or more. Thus, the rebuttable presumption of detention without bail applies in the instant case. Further, the proffer of the United States in the hearing before the District Court reinforces the presence of the rebuttable presumption.[7]

As stated previously, the instant case is governed by the presumption of detention set forth under the Bail Reform Act based on possession of narcotics with intent to distribute. 21 U.S.C. § 841(a)(1). The Court must, therefore, analyze the statutory factors required under the law. The Court proceeds in seriatim fashion to examine the statutory criteria at 18 U.S.C. § 3142(g)(1), (2), (3), (4) and then proceeds to conclude whether the evidence preponderates towards detention or bail.

The first two factors, which the Court will consider in conjunction, pertain to the nature and circumstances surrounding the offense and the weight of the evidence as to guilt or innocence. Thus, it is imperative for the Court to analyze the nature and circumstances surrounding the Defendant's arrest and the evidence obtained by the arresting officers at Defendant's residence.

In the case at bar, Defendant is charged with possession of weapon in furtherance of a drug trafficking crime, conspiracy in furtherance of possessing a firearm by a convicted felon, and money laundering, *charges which are all unquestionably quite serious and dangerous in nature.* Particularly, Defendant has been deemed a facilitator within the drug organization

---

7. Parties may offer proffers at the bail procedures pursuant to the case of *United States v.*

*Acevedo Ramos*, 755 F.2d 203, 208 (1st Cir. 1985).

based on his access to substantial amounts of cash, vehicles, properties and close association with high-level members of the drug trafficking organization, including Jorge Silva–Rentes.

Defendant had direct access to large amounts of cash. The Government proffered that Defendant paid, along with two other members of the conspiracy, over $300,000 for a Mercedes–Benz automobile in a money laundering transaction. Furthermore, a search warrant executed by the government yielded $1.3 million in cash, jewelry, a money counting machine, and an unregistered firearm in a Luquillo home that, under Defendant's common law wife's admission, was regularly used by Defendant. Although Defendant now claims the $1.3 million found in the secret compartment of a vehicle seized on a property he used do not belong to him, on September 25, 2014, Defendant's attorneys for the miscellaneous claims (not counsel in the instant case) filed a claim demanding the return of the money found inside the Luquillo home alleging it was "illegally seized . . . in violation of Fourth Amendment Constitutional Rights . . ." (*See* Docket No. 329) [8]. Further incriminating the defendant are the assertions made by his common law wife, Brenda Gomez–Encarnacion, at the bail review hearing that the auto where the cash was found was used by Defendant and the Luquillo beach house where the car was located was frequented by her and Defendant for weekend vacations.

Finally, Defendant has been identified by a witness with personal knowledge who will be available at trial as the person who was presumably threatening the life of another person. Defendant is alleged to have said, " . . . this one, he or she, is talking about us. This motherfucker, he or she, is talking with the feds and he or she is snitching on us. We have to screw him or her."

The third factor which the Court must consider pertains to the history and characteristics of the accused, including his past conduct, ties to the community, financial resources, and employment. This factor weighs most heavily against the accused as he had access to large sums of cash over which he claimed ownership in two sworn statements and has drug-related ties outside of Puerto Rico. Furthermore, his facilitator role in the conspiracy tasked him with carrying out critical tasks for the conspiracy. Further, persons who have strong ties to drugs potential to launder large quantities of cash proceeds from drug trafficking, and strong with ties with foreign contacts, as Defendant does, raise a strong presumption of flight risk. *See U.S. v. Jessup,* 757 F.2d at 384 (the Court found the Bail Reform Act's drafters were of the opinion that "flight to avoid prosecution is particularly high among persons charged with major drug offenses"); *See,*

---

8. Defendant contends he was duped into filing the claim. The Court, however, finds Defendant's sworn statement (Docket No. 329) to be nothing more than a sham affidavit. In determining whether the testimony constitutes an attempt to create an issue of fact, the court may consider the timing of the affidavit, as well as the party's explanation for the discrepancies. *See Orta–Castro v. Merck, Sharp & Dohme Química PR., Inc.,* 447 F.3d 105, 110 (1st Cir.2006) (affirming the district court's decision to disregard later filed affidavit that contradicted prior [sworn statement]). Such testimony can be stricken by the court when the party proffering the evidence provides no satisfactory explanation for the changed testimony. *See Torres v. E.I. Dupont De Nemours & Co.,* 219 F.3d 13, 20–21 (1st Cir.2000) (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4–5 (1st Cir.1994)). Defendant has provided two sworn statements in two separate cases claiming to be the owner of the $1.3 million in cash found in the vehicle. *See In re: Warantless Search of $1,389, 550,* 14–mc–360; *In re: Seizure of $27,724 in U.S. Currency,* 14–mc–496.

e.g., "Bail Reform" Hearings Before the Sub-committee of the Senate Judiciary Committee, 97th Cong., 1st. Sess., Sept. 17, Oct. 21, 1981 at 67.70 (graphs 1.2)(Comm. Print 1982)(suggesting that in the ten districts studied, drug offenders account for approximately 1/6 of all crimes charged but 1/2 of all bail jumping.)

Turning to the fourth and final factor in our analysis, the nature and gravity of the danger posed by the person's release, the Court finds by clear and convincing evidence that Defendant poses a flight risk should bail be granted. *See Salerno,* 481 U.S. at 750, 107 S.Ct. 2095. Not only does Orta have the means and motivation to flee the jurisdiction, but his direct ties to the upper members of the conspiracy and his important role within the organization poses a significant threat to the community.

Accordingly, the Court agrees with Magistrate Judge Lopez's determination that Defendant poses a safety threat to the community by "clear and convincing" evidence under *Salerno,* 481 U.S. at 750, 107 S.Ct. 2095. Therefore, the Court **determines that Defendant is to be held without bail until trial.**

## IV. CONCLUSION

After carefully examining all the evidence and the pertinent factors, the Court finds that the Defendant has failed to rebut the presumption of presenting a danger to the community. Defendant cannot make a reasonable assurance that he can satisfy the criteria of "community safety" as required under *Tortora,* 922 F.2d at 892. Further, it is evident to the Court that, based on the government's proffered evidence detailed above, Defendant also poses an obvious risk of flight. *See United States v. Patriarca,* 948 F.2d 789, 793 (1st Cir.1991) (preponderance of the evidence to establish "risk of flight"). Hence, Defendant Hector L. Orta–Castro is hereby ordered to remain **DETAINED WITHOUT BOND** pending trial.

**IT IS SO ORDERED.**